IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Sheila D. Meredith, ) C. A. No. 2:08-2961-RBH-RSC
)
        Plaintiff, )
)
    -versus- ) **REPORT AND RECOMMENDATION**
)
Michael J. Astrue, )
Commissioner of Social )
Security, )
)
        Defendant. )

This case is before the court pursuant to Local Rule 83.VII.02, D.S.C., concerning the disposition of Social Security cases in this District.

The plaintiff, Sheila D. Meredith, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g) (2003)), to obtain judicial review of a final decision of the Commissioner of Social Security denying the plaintiff's claims for disability insurance benefits under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff protectively filed an application for disability insurance benefits on December 30, 2004, alleging that she became disabled on December 7, 2004, due to depression, obsessive-compulsive disorder (OCD), generalized anxiety disorder, arthritis, and difficulties with memory and concentration. The application was denied initially and on reconsideration by the Social Security Administration. The plaintiff filed a request for a hearing on April 27, 2006. The

administrative law judge before whom the plaintiff appeared with counsel, a vocational expert, Karl Weldon, and a friend, Nora Collins, considered the case de novo, and on February 29, 2008, found that the plaintiff was not disabled under a disability as defined in the Social Security Act, as amended. (Tr. 17-28.) The administrative law judge's opinion became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on July 7, 2008.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner adopted the following findings of the administrative law judge:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2008.
>
> 2. The claimant has not engaged in substantial gainful activity since December 7, 2004, the alleged onset date [20 C.F.R. 404.1520(b), 404.1571 et seq., 416.920(b), 416.971 et seq. (2009)]. . . .
>
> 3. The claimant has the following severe combination of impairments: major depressive disorder, pseudodementia, substance dependence, borderline personality disorder, and osteoarthritis [20 C.F.R. 404.1520(c), 416.920(c)]. . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 [20 CFR 404.1520(d), 404.1525, 416.920(d), 416.925, 416.926]. . . .
>
> 5. After careful consideration of the entire record, I agree with the State Agency medical consultant's finding that the claimant has no severe physical impairments. She had a musculoskeletal/neurological exam in July 2005

2

> which was normal and with no physically limiting objective findings. The musculoskeletal, GI reflux, and central nervous system history of small vessel brain are not severe and do not significantly affect ability to work (Exhibit 14F). Additionally, the claimant has the ability to perform unskilled work as long as she is not in constant contact with the general public (Exhibit 9F/3). I have interpreted this to mean only "occasional" contact with the public. . . .
>
> 6. The claimant is capable of performing past relevant work as an assembler as indicated by vocational expert testimony. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity [20 C.F.R. 404.1565, 416.965]. . . .
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from December 7, 2004 through the date of this decision [20 C.F.R. 404.1520(f), 416.920(f)].

(Tr. 19-28.)

## APPLICABLE LAW AND REGULATIONS

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability." 42 U.S.C. § 423(a). Disability is defined in 42 U.S.C. § 423(d)(1)(A) as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can expected to result in death or which has lasted or can be expected to last for at least 12 continuous months."

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has, by regulation, reduced the statutory definition of "disability" to a series of

3

five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an impairment contained in the Social Security Act listings of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. 20 C.F.R. § 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Secretary's decision as long as it is supported by substantial evidence. See Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

In short, the only issue before the Court is whether the final decision of the Commissioner is supported by substantial evidence and proper legal standards have been applied.

## ARGUMENTS PRESENTED

By brief, the plaintiff argued the following.

1). The administrative law judge here failed to properly evaluate all of Meredith's physical and mental impairments in finding her residual functional capacity and before erroneously finding she could perform past work.

2). The administrative law judge here failed to properly evaluate Meredith's credibility and failed to give specific reasons for discounting her statements.

3). The Appeals Council failed to remand the case to the administrative law judge to consider new and material evidence and was wrong when it concluded that Dr. Salmon's report is about a time after the administrative law judge's decision.

4). In her reply brief, the plaintiff also asserted that the administrative law judge erred in not complying with SSR-82-62 to "obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work."

## RESIDUAL FUNCTIONAL CAPACITY

Social Security Ruling 96-8p states that a residual functional capacity "assessment must be based on all of the relevant evidence in the case record." The administrative law judge cannot ignore the evidence which does not fit the conclusion he needs but is required to weigh each item of

5

evidence. Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984). A severe impairment is one which significantly limits the ability to do basic work activity. 20 C.F.R. §§ 404.1521(a), 416.921(a).

Here, the administrative law judge concluded without explanation that the plaintiff's personality disorder would limit the plaintiff's interactions with the public but would not affect her ability to interact with supervisors and co-workers. The judge reported that Dr. Lawler noted the plaintiff experienced extreme mood swings with episodes of poorly controlled anger and was easily insulted. (Tr. 231.) Further, the judge considered that Dr. Lawler stated the plaintiff's anxiety was so overwhelming that she may not be able to meet minimal role expectations, accept instructions, or appropriately respond to criticism. (Tr. 231.) Nevertheless, the administrative law judge found the plaintiff had the residual functional capacity (RFC) to perform unskilled work as long as she is not in occasional contact with the public, but does not explain how she would be able to work if she has occasional contact with co-workers or supervisors as in her past relevant work. There is neither substantial evidence nor an explanation supporting this finding.

Additionally, the administrative law judge did not explain how he inconsistently determined the plaintiff's osteoarthritis was a severe impairment, but also determined it was not a severe physical impairment. (Findings 3 and 5.) Osteoarthritis is a chronic, degenerative condition where the joint's cartilage breaks down causing the bones to rub against each other. Osteoarthritis causes stiffness, pain, and loss of movement in

6

the person's joints. The stiffness and pain are physical impairments. The administrative law judge also did not explain his finding that the plaintiff's headaches, probably secondary to a head injury from a previous motor vehicle accident several years before, were not a severe impairment. Without an explanation to review, the court cannot determine whether there is substantial evidence to support the judge's decision that the plaintiff has the residual functional capacity to perform past relevant work.

## **CREDIBILITY ASSESSMENTS**

In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the individual. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The findings of credibility concerning an individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not

enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim and to ensure a well-reasoned determination or decision.

In making a finding about the credibility of an individual's statements, the adjudicator need not totally accept or totally reject the individual's statements. Based on a consideration of all of the evidence in the case record, the adjudicator may find all, only some, or none of an individual's allegations to be credible. The adjudicator may also find an individual's statements, such as statements about the extent of functional limitations or restrictions due to pain or other symptoms, to be credible to a certain degree. For example, an adjudicator may find credible an individual's statement that the abilities to lift and carry are affected by symptoms, but find only partially credible the individual's statements as to the extent of the functional limitations or restrictions due to symptoms, i.e., that the individual's abilities to lift and carry are compromised, but not to the degree alleged. Conversely, an adjudicator may find credible an individual's statement that symptoms limit his or her ability to concentrate, but find that

the limitation is greater than that stated by the individual.

Moreover, a finding that an individual's statements are not credible, or not wholly credible, is not in itself sufficient to establish that the individual is not disabled. All of the evidence in the case record, including the individual's statements, must be considered before a conclusion can be made about disability.

Assessment of the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to:

* The medical signs and laboratory findings;

* Diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and

* Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

The adjudicator must also consider any observations about the individual recorded by Social Security Administration (SSA) employees during interviews, whether in person or by telephone. In instances where the individual attends an administrative

proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements.

Consideration of the individual's statements and the statements and reports of medical sources and other persons with regard to the seven factors listed in the regulations, along with any other relevant information in the case record, including the information described above, will provide the adjudicator with an overview of the individual's subjective complaints. The adjudicator must then evaluate all of this information and draw appropriate inferences and conclusions about the credibility of the individual's statements. Social Security Ruling 96-7.

Here, the administrative law judge concluded the plaintiff's statements were not entirely credible and cited specific reasons for that conclusion. One reason was the plaintiff's statement that she had not used marijuana or other illegal drugs although she tested positive for marijuana. (Tr. 228 (Dr. Harris's medical records confirmed a positive drug test for opiates and marijuana) and Tr. 494 (the plaintiff stated she had never abused drugs or alcohol).) Another reason referenced for discrediting the plaintiff's testimony was Dr. Cannon's noted impression that the plaintiff may have been embellishing her symptoms. (Tr. 246.) Dr. Cannon gave the plaintiff memory tests which did not indicate significant memory impairment. (Tr. 246.) However, the plaintiff told him she has trouble remembering. (Tr. 246.) The administrative law judge also cited other perceived

inconsistencies to support his decision on credibility. (See Tr. 384 and Tr. 497.)

On the other hand, the judge failed to mention the testimony of the plaintiff's witness, Nora Collins, much less make any findings concerning her corroborative testimony. He did not explain how Ms. Collins's statements did not totally corroborate the plaintiff's. The same is true for other witnesses who made statements on behalf of the plaintiff.

Thus the administrative law judge neglected his duty to evaluate all of the evidence and draw appropriate inferences and conclusions about the credibility of the individual's statements. Social Security Ruling 96-7.

## SUBMISSION OF EVIDENCE TO THE APPEALS COUNCIL

Plaintiff argues that the Appeals Council erred in denying review of the administrative law judge's decision because the April 14, 2008, report of Dr. Salmon submitted with her request for review warranted review as both "new" and "material" evidence.

The Commissioner's regulations provide that the Appeals Council will review an administrative law judge's decision if a claimant proffers "new and material evidence" that relates to the period on or before the date of the administrative law judge's decision. See 20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-5p. Evidence is "new" if it is not duplicative or cumulative, and "material" if there is a reasonable likelihood that the evidence would have changed the outcome. See Wilkins v. Sec'y of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991).

11

In this case, Dr. Salmon's report and test results may be new because it did not exist at the time of the administrative proceedings, but it is not "new" in that it contains nothing which could not and in deed was not available before the administrative hearing. Nor is it the only psychological assessment in the record. (<u>See</u>, i.e., Tr 180-284.) The report appears actually to be an attempt to discredit the administrative law judge's decision in the guise of a medical report made after the fact and upon review of the administrative law judge's decision. For example, the report contains over two pages of opinion and general research explaining why the plaintiff's denial of drug use should not be weighed against the plaintiff on the issue of credibility. (Tr. 468-470). This is not new evidence such that the appeals council was required to review it or remand the matter to the administrative law judge. That is not to say, however, that the report is irrelevant to the plaintiff's condition, just that it is not new and material evidence.

### **DEMANDS OF PAST RELEVANT WORK**

Social Security Ruling 82-62 explains the procedures for determining a disability claimant's capacity to do past relevant work.

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the

reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

Sufficient documentation will be obtained to support the decision. Any case requiring consideration of PRW will contain enough information on past work to permit a decision as to the individual's ability to return to such past work (or to do other work).

Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source. Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience. In addition, for a claim involving a mental/emotional impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work. Persons with physical impairments (e.g., cardiovascular or gastrointestinal disorders) may have performed

> stressful tasks. This may also require a decision
> as to whether the impairment is compatible with
> the performance of such work. If more than one job
> was performed during the 15-year period, separate
> descriptions of each job will be secured.

Here, as discussed above, the administrative law judge failed to appropriately consider the plaintiff's past relevant work because he did not consider how the plaintiff's personality disorder limits her interactions with supervisors and co-workers. The plaintiff's past relevant work included being a laborer, vendor, cashier, and assembler. In each of those jobs, the plaintiff would have to interact with supervisors and co-workers. The administrative law judge failed to comply with SSR 82-62 because he did not properly consider how the plaintiff can work with other people as required by those jobs. Additionally, as discussed above, the administrative law judge did not properly consider the effect of the plaintiff's osteoarthritis, including stiffness and pain, on her ability to perform her past relevant work.

## CONCLUSION

The administrative law judge did not sufficiently consider or explain the effect of the plaintiff's impairments on her ability to perform past relevant work. Additionally, the judge failed to properly evaluate the credibility of the plaintiff and her witnesses.

Accordingly, for the aforementioned reasons, it is recommended that pursuant to the power of this court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence

four of §§ 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3), and the case remanded to the Commissioner to perform a complete evaluation of the plaintiff's witness credibility and proper evaluation of the plaintiff's ability to perform past relevant work. <u>See</u> <u>Melkonyan v. Sullivan</u>, 111 S. Ct. 2157 (1991).

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
September 22, 2009